## HOMIRE v. HALFMAN.

[No. 19,047. Filed April 18, 1901.]

INTOXICATING LIQUORS.—*Husband and Wife.*—*Unlawful Sales.*—*Loss of Support.*—*Damages.*—Where a saloon-keeper sold intoxicating liquors to a person who was at the time intoxicated, in consequence of which sale the latter became so crazed that he committed murder, and was sent to the penitentiary, the wife of such intoxicated person may maintain an action against the saloon-keeper, under §§15 and 20 of the act of 1875 (Acts 1875 s. s., p. 55), for loss of means of support.

From the Clinton Circuit Court. *Reversed.*

*H. C. Ulen, Jr., R. Halloman* and *W. A. Staley,* for appellant.

DOWLING, C. J.—Action for damages alleged to have been sustained by appellant by reason of having been deprived of her means of support by the wrongful act of the appellee. The complaint was in a single paragraph, to which a demurrer was sustained for want of facts. Judgment for appellee followed. The error assigned presents the question of the sufficiency of the complaint, the material allegations of which were as follows: That on August 8, 1892, the plaintiff was married to Fred Homire, and has ever since been, and now is, his legal wife; that as such wife she was dependent upon her said husband for her support and maintenance prior to and until June 8, 1898; that on June 8, 1898, the defendant, John H. Halfman, who was then and there engaged in selling, bartering, and giving away intoxicating liquors in the city of Lebanon, Indiana, and engaged in what is commonly known as the saloon business, did then and there wrongfully and unlawfully sell to, give away to, barter, and furnish to the plaintiff's said husband a quantity of intoxicating liquor, plaintiff's said husband being then and there in a state of intoxication, as the said defendant then and there knew at the time when he furnished such liquor to the said Fred Homire; that said

intoxicating liquor so sold, given away, bartered, and furnished to the said Fred Homire by the said defendant was drank by the said Homire, said plaintiff's husband, from the effects of which he became so extremely intoxicated as to be irritable, crazed, and frenzied; that while in such irritable, crazed, and frenzied condition, plaintiff's said husband went from defendant's place of business in said city to the home in said city where plaintiff's said husband, together with this plaintiff, and one Seth Nease, then and there resided; that, upon arriving at said home in such irritable, frenzied, and crazed condition plaintiff's husband procured a revolver pistol, loaded with gunpowder and leaden balls, and did then and there, while in such irritable, frenzied, and crazed condition, so caused by defendant's wrongful and unlawful sale and furnishing of said intoxicating liquors to the said Fred Homire, wrongfully, purposely, unlawfully, and feloniously, shoot and discharge said revolver pistol at and against the body of the said Seth Nease, then and there and thereby inflicting upon the person of the said Seth Nease a mortal wound, from which mortal wound, caused as aforesaid, the said Seth Nease then and there died; that, afterwards, on said day, the plaintiff's husband was arrested by the officers of the law, charged with said killing, and confined in the county jail of Boone county, Indiana; that, afterwards, on the — day of June, the said Fred Homire was indicted by the grand jury of the Boone Circuit Court, of Boone county, Indiana, at the April term, 1898, thereof, charged with murder in the first degree in the killing of said Seth Nease; that on the — day of June, 1898, the said Fred Homire entered upon his trial on said indictment in the Boone Circuit Court; that, afterwards, on the — day of July, 1898, the jury in said cause returned a verdict into open court finding the said Fred Homire guilty of murder in the first degree, and assessing his punishment at imprisonment in the state's prison during the term of his natural life; that, afterwards, on July 5, 1898, the said

Boone Circuit Court rendered judgment upon said verdict, and adjudged that the said Fred Homire be confined in the state prison of Indiana during the term of his natural life; that on the — day of July, 1898, the said Fred Homire, in pursuance of said judgment, was removed by the sheriff of Boone county from the jail of that county to the state's prison in the county of LaPorte, there to remain during the term of his natural life; that by reason of such confinement of the said Fred Homire, the plaintiff's said husband, the plaintiff has not been since June 8, 1898, is not now, and will never again be able to be supported and maintained by her said husband; that on said June 8, 1898, the said Fred Homire was of sound body and mind, and was fifty-two years of age; that by reason of the matters stated the plaintiff has been greatly and permanently injured in her means of support, to her damage $20,000; that said injuries were caused by, and resulted from, the defendant's wrongful act in selling, etc., intoxicating liquors to the plaintiff's husband while in a state of intoxication.

The action is founded upon §20 of "An act to regulate and license the sale of spirituous, vinous, and malt, and other intoxicating liquors," etc.; approved March 17, 1875, which is as follows: "Every person who shall sell, barter, or give away any intoxicating liquor in violation of any of the provisions of this act, shall be personally liable, and also liable on his bond filed in the auditor's office, as required by §4 of this act, to any person who shall sustain any injury or damage to his person or property, or means of support, on account of the use of such intoxicating liquors, so sold as aforesaid, to be enforced by appropriate action in any court of competent jurisdiction." §7288 Burns 1894, §5323 R. S. 1881. Section 15 of said act of 1875 (Acts 1875, s. s. p. 55) is in these words: "Any person who shall sell, barter, or give away any spirituous, vinous, or malt liquors to any person at the time in a state of intoxication, shall be deemed guilty of a misdemeanor, and, upon conviction

thereof, shall be fined in any sum not less than $10 nor more than $50."

It was held by this court in *Mulcahey* v. *Givens,* 115 Ind. 286, 288, that §20 is to be construed as if it read: "Every person who shall sell, barter, or give away any spirituous, vinous or malt liquors to any person at the time in a state of intoxication, shall be personally liable, and also liable on his bond  *  *  *  to any person who shall sustain any injury or damage to his person or property, or means of support, on account of the use of such intoxicating liquors. As thus construed, the right to prosecute a civil action under that section for the sale of alcoholic liquors to a person in a state of intoxication was neither abridged nor taken away by the subsequent enactment of §2092, above set out."

Upon the question before us, the case of *Beers* v. *Walhizer,* 43 Hun 254, is directly in point. The averments of the complaint in that case were substantially the same as in the one at bar. The court there said: "The only argument presented by the defendant, in support of the ruling at the circuit, is upon the facts as stated in the complaint. [It is said that] It does not appear that the loss of means of support sustained by the plaintiff was the direct result of the intoxication; that the arrest, trial, and conviction of the plaintiff's husband by the officers of the law, and which resulted in his imprisonment, was the cause that produced that result, and was wholly independent of the intoxication produced by the liquor sold by the defendant George, and for that reason no cause of action was alleged against them within the provisions of the said act. The homicide committed by Beers was a crime punishable by imprisonment, and his arrest, conviction, and sentence was a result to be anticipated, and, as a matter of course, by the force and operation of the law of the land. The conviction of Beers was not the cause of his imprisonment, but was the result of the crime which he perpetrated in killing Banfield, and that act was the direct and only cause in the eye of the law for

his incarceration.   Under the act it is necessary that two facts should concur besides the sale or gift of the liquor by the defendant to constitute a cause of action, to wit, intoxication resulting from its use in whole or in part, and the loss of the means of support by the plaintiff in consequence of such intoxication.   The statute requires nothing more. The act itself establishes a rule of evidence, applicable to and controlling in all cases arising under its provisions, which in some respects is new, and has produced a radical change of the common law rule.   The statute makes no distinction whether the loss of the means of support is the direct or remote result of the intoxication.   It only requires that it should be established that the loss of the means of support is the result of such intoxication.   The decisions are all in one direction on this subject, and the meaning and effect of the statute in this respect is settled by the frequent interpretation which has been placed upon its provisions. In *Bertholf* v. *O'Reilley* (74 N. Y. 509), Andrews, J., in delivering the opinion of the court, said:   The legislature 'may change the rule of the common law, which looks only to the proximate cause of the mischief, in attaching the legal responsibility, and allow a recovery to be had against those whose acts contributed, although remotely, to produce it. This is what the legislature has done in the act of 1873.' In *Volans* v. *Owen* (74 N. Y. 529), the same learned judge remarked that both direct and consequential injuries are plainly included in the remedy given, and the legislature by giving a right of action for injury to means of support, created a cause of action unknown to the common law.   In *Meade* v. *Stratton* (87 N. Y. 493), it was held that the statute provides for a recovery by action for injuries to person or property, or means of support, without any restriction whatever, and that both direct and consequential injuries were included; that it is evident that the legislature intended to go, in such a case, far beyond anything known to the common law, and to provide a remedy for in-

juries occasioned by one who was instrumental in the pro-
ducing or who caused such intoxication.    In the recent
case of *Neu* v. *McKechnie* (95 N. Y. 632) a like interpre-
tation was given to the statute, and applied to the case then
under consideration." The decision in *Beers* v. *Walhizer*,
*supra*, was followed in *McCarty* v. *Wells*, 51 Hun 171, 4 N.
Y. Supp. 672, 20 N. Y. St. 630, and *Bacon* v. *Jacobs*, 63
Hun 51, 17 N. Y. Supp. 323.

It was said in *McCarty* v. *Wells*, 20 N. Y. St. 630, "The
question was not whether the death of the deceased was the
natural, reasonable, or probable consequence of the defend-
ant's act; but it was enough if intoxication, caused in whole
or in part by liquor sold by the defendant, was the cause of
the death of the plaintiff's husband, if by reason thereof the
plaintiff's means of support were injuriously affected."

The rule is laid down in many cases that an action may be
maintained under similar statutes for loss of means of sup-
port, when occasioned in whole or in part by such sales.    If
the means of support are lessened, and this result can be
traced to the sale of intoxicants, there is a right of recovery
for such loss, as in case of lessened ability to labor, and loss
of attention to business. *Wightman* v. *Devere*, 33 Wis. 570;
*Hutchinson* v. *Hubbard*, 21 Neb. 33, 31 N. W. 245; *Volans*
v. *Owen*, 74 N. Y. 526, 30 Am. Rep. 337.; *Schneider*
v. *Hosier*, 21 Ohio St. 98.    So, where sickness or insanity
is the result of the intoxication. *Mulford* v. *Clewell*, 21
Ohio St. 191.    And where expenses are incurred for care
and medical attention. *Wightman* v. *Devere, supra*.    And
where the husband was robbed while intoxicated, the
wife was allowed to sue. *Franklin* v. *Schermerhorn*, 8
Hun 112.    And, so, where the husband spends the wife's
money for drink. *McEvoy* v. *Humphrey*, 77 Ill. 388.    And
the mother was allowed to recover for injuries where the
son overdrove her horse on account of drink. *Bertholf* v.
*O'Reilly*, 8 Hun 16.    The mere spending by the husband
of his own money, it has been said, will give a right of ac-

tion by the wife. *Quain* v. *Russell,* 8 Hun 319; *Mulford* v. *Clewell,* 21 Ohio St. 191; *Woolheather* v. *Risley,* 38 Iowa 486; *Hackett* v. *Smelsley,* 77 Ill. 109. And so a widow, dependent on her son, may maintain an action for the sale of liquors to her son if it injures her means of support. *McClay* v. *Worrall,* 18 Neb. 44, 24 N: W. 429. So, too, as to a father if dependent upon a son. *Stevens* v. *Cheney,* 36 Hun 1; *Volans* v. *Owen,* 74 N. Y. 526, 30 Am. Rep. 337; *Bertholf* v. *O'Reilly,* 74 N. Y. 509, 30 Am. Rep. 323. See, also, *Mulcahey* v. *Givens,* 115 Ind. 286; *Beem* v. *Chestnut,* 120 Ind. 390; *Dunlap* v. *Wagner,* 85 Ind. 529, 44 Am. Rep. 42; Black on Intox. Liquors, §308.,

These authorities and many others which might be cited seem to meet every objection which can be taken to the complaint in this case. In our opinion, a sufficient cause of action was stated, and the court erred in sustaining the demurrer. Judgment reversed.